STATE of North Dakota for the Benefit of the NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU and Duane Houghton, Claimants and Appellants,

v.

BROADWAY INVESTMENT COMPANY a corporation, Defendant and Respondent.

No. 7675.

Supreme Court of North Dakota.

Sept. 23, 1957.

Rehearing Denied Oct. 14, 1957.

Paul M. Sand, Asst. Atty. Gen., for North Dakota Workmen's Compensation Bureau.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for Duane Houghton.

Conmy & Conmy, Fargo, for respondent.

JOHNSON, Judge.

This is a proceeding in which the State of North Dakota for the benefit of the North Dakota Workmen's Compensation Bureau and Duane Houghton seeks to recover an award of $1,740.19 from the defendant under the terms of Chapter 65–09, NDRC 1943, as amended, on the theory that Duane Houghton was an employee of the Broadway Investment Company, an uninsured employer.

A notice of hearing was issued by the Workmen's Compensation Bureau on March 20, 1953, addressed to Duane Houghton, claimant; his attorneys; the Broadway Investment Company; P. T. Mikkelson; Willmar Zitzow; and Alfred Zitzow, as employers. When these proceedings were started, the Workmen's Compensation Bureau did not know and had not ascertained who was the employer or employers of Duane Houghton. The notice stated that it was:

> "To determine whether or not the alleged injury is compensable under the North Dakota Workmen's Compensation Act and to determine who was the employer of the claimant on the alleged date of injury and to determine whether or not the alleged employer or employers had North Dakota coverage as provided by law."

Duane Houghton, 20 years of age, was injured on January 30, 1952, while doing work as a carpenter with a "skill saw". At the time of his injury he was working on a duplex being built in Fargo, North Dakota. His injury consisted of traumatic amputation of right fore and middle fingers above proximal interphalangeal joint, resulting in the necessity of the amputation of the right fore and middle fingers. On October 4, 1952, Duane Houghton filed first notice of injury and preliminary application of his claim with the North Dakota Workmen's Compensation Bureau. In his application he listed as employers, Broadway Investment Company, P. T. Mikkelson, Alfred and Willmar Zitzow. On October

30, 1952, Duane Houghton filed a progress report with the North Dakota Workmen's Compensation Bureau in which he named Willmar and Alfred Zitzow as his employers. The "Report of Employer" attached to the progress report is in blank.

On March 30, 1955, the North Dakota Workmen's Compensation Bureau by its attorney, one of the Assistant Attorneys General of the State of North Dakota, sent a notice demanding payment of award within thirty days to the Broadway Investment Company. This notice was sent under the provisions of Title 65–09, NDRC 1943. Pursuant to the original notice of March 20, 1953, a hearing was had before Commissioner R. J. Sailer at Fargo, North Dakota. Present at said hearing were Leslie Ike, an officer of the Broadway Investment Company, E. T. Conmy, appearing specially for the Broadway Investment Company and for P. T. Mikkelson; W. L. Zitzow, Alfred Zitzow, Duane Houghton, the claimant, and Myron Bright, representing the claimant. After an extended hearing the Workmen's Compensation Bureau, on March 22, 1955, made its findings of fact, conclusions of law and order for award. Insofar as pertinent to the issues before us it found: that Duane Houghton sustained an injury on January 30, 1952, "as an employee of and while in the employment of the defendant, Broadway Investment Company"; that he was disabled from January 30, 1952, to April 29, 1952, and that at the said time he was a single man age 20, with no dependents. It also found that the Broadway Investment Company, the alleged employer, had not contributed to the workmen's compensation fund nor had it made any application for coverage, and had not complied with the North Dakota Workmen's Compensation Act as amended; that Houghton was engaged in a hazardous occupation; that P. T. Mikkelson was "in fact an agent of the Broadway Investment Company, the defendant employer"; that as a result of Duane Houghton's injury, the Bureau incurred expenses amounting to a total of $1,740.19; that Duane Houghton was

entitled to benefits under the Workmen's Compensation Act; that the Broadway Investment Company under the provisions of Chapter 65–09, NDRC 1943, is liable for the injury sustained by Duane Houghton and the expenses in connection therewith and made an award accordingly. It further ordered that the Broadway Investment Company pay to the Bureau or the claimant the amount of the award and that if it failed to perfect an appeal from the Workmen's Compensation Bureau's award within thirty days from the date of said award, the Bureau would reduce said award to judgment in favor of the State of North Dakota for the benefit of the Workmen's Compensation Bureau and against the defendant Broadway Investment Company and petition the court for the approval of the same for the amount of the award in accordance with the provisions of Section 65–0903, NDRC 1953 Supp. The bureau made no finding as to its jurisdiction, but it took jurisdiction and made its findings of fact and conclusions of law and order for award.

The Broadway Investment Company appealed from the order for award to the District Court of Cass County, North Dakota, and asked a trial de novo. At the time of the hearing before Commissioner Sailer, Mr. Conmy, on behalf of the Broadway Investment Company and Mr. Mikkelson objected to the jurisdiction of the Bureau to compel the Broadway Investment Company and Mr. Mikkelson to litigate the question as to who was the employer of Duane Houghton, and appeared specially objecting to the jurisdiction. However, Broadway Investment Company and Mr. Mikkelson, without waiving their special appearance, participated in the hearing and examined the witnesses that were called for examination and cross-examination under the statute.

On appeal to the district court, the Broadway Investment Company assigned as error the denial of its objection to the jurisdiction of the Workmen's Compensation Bureau. It also objected to the

Bureau's requirement to give testimony. The same objection was made on behalf of P. T. Mikkelson. It further assigned as error that there was no sufficient testimony to support enumerated findings of the Bureau, and that they are contrary to both fact and law; that the Bureau was without jurisdiction to determine this matter because of failure to comply with Chapter 28–32, NDRC 1943, as amended; that its findings and conclusions are erroneous in that there was no sufficient testimony to authorize a variance of the written partnership agreement made by Houghton, and that the undisputed testimony shows that Duane Houghton was not an employee of the Broadway Investment Company, a corporation, at the time of the injury, but was a member of the partnership, which was a subcontractor on a building job.

The District Court, after reviewing the entire record and testimony taken before the Bureau on April 16, 1953, pursuant to the notice of March 20, 1953, concluded that the Bureau was without jurisdiction and also that the testimony failed to show that the claimant was ever hired by or employed by a representative of the Broadway Investment Company or by P. T. Mikkelson; that certain findings of fact enumerated by the Bureau are not supported by the testimony; and further that there was a failure to comply with the prerequisites of Chapter 28–32, NDRC 1943, as to notice of specifications including the making of service on the parties, and concluded as a matter of law that the order for award made by the Bureau on March 22, 1955, is illegal and void and reversed the proceedings and remanded them to the Bureau for action in accordance with its findings. Both the Bureau and the claimant appealed to this court asking a review and a retrial of the entire case in the Supreme Court.

The appellants contend that there are three primary issues involved in these proceedings:

1. Did the Bureau have jurisdiction?

2. Was Duane Houghton an employee of the Broadway Investment Company?

3. Was Duane Houghton an employee or an independent contractor?

We will first determine the question of jurisdiction. The claimant, Duane Houghton, by his first notice of injury and preliminary application to the North Dakota Workmen's Compensation Bureau listed as his employers, the Broadway Investment Company, P. T. Mikkelson, Alfred Zitzow, and Willmar Zitzow. The Bureau made an award to him and then commenced the proceedings under the provisions of Chapter 65–09, NDRC 1943, as amended. Section 65–0902 thereof provides:

"Any employee whose employer has failed to comply with the provisions of chapter 4 of this title, who has been injured in the course of his employment, wheresoever such injury has occurred, or his dependents, in case death has ensued, in lieu of proceedings against his employer by civil action in court, may file his application with the bureau for an award of compensation in accordance with the terms of this title. The bureau shall hear and determine such application for compensation in like manner as in other claims before the bureau. After the filing of such claim by said injured employee, or his dependents, in case of death, the bureau shall set a date for a hearing on said claim and notice of said hearing shall be served by registered mail on all interested parties, except that the service on the employer shall be made in the manner now provided for the service of a summons in a civil action and said hearing shall be held upon at least ten days notice. *At such hearing witnesses shall be heard for and in behalf of the claimant and employer and any interested party.*" (Emphasis supplied.)

The Bureau has full power and authority to hear and determine all ques-

tions within its jurisdiction, Section 65–0503, NDRC 1953 Supp. Chapter 65–09, NDRC 1943, as amended, evidences a legislative intent to impose a liability upon uninsured employers for injury to employees. Failure to comply with Chapter 65–04, ND RC 1943, deprives the employer of certain common law defenses, Section 65–0901, NDRC 1943. It is apparent that Chapter 65–09, NDRC 1943, as amended, was enacted for the purpose of protecting the Workmen's Compensation Fund to the fullest extent possible. It is unlawful for any person, firm, or corporation, to employ anyone, or to receive the fruits of the labor of any person, in a hazardous employment as defined by the Workmen's Compensation Law, when such employee is not protected by the workmen's compensation insurance in full force and effect. The Bureau upon proper application is permitted to seek to enjoin the unlawful employment of uninsured workers. Section 65–0105, NDRC 1943.

■ Many cases have held that the Workmen's Compensation Act, being remedial in nature, should be given a liberal construction to accomplish the purpose intended. Meyer v. Roettele, 64 S.D. 36, 264 N.W. 191. For other cases see 39 North Western Dig., Workmens Compensation, ⊛⇒51, page 748. The provisions of the Workmen's Compensation Act are construed liberally in the workman's favor. State for the Benefit of Workmen's Compensation Fund v. E. W. Wylie Co., 79 N.D. 471, 58 N.W.2d 76. The applicable rule of construction is that the Workmen's Compensation Act is to be construed liberally so that its beneficent purposes may not be thwarted by technical refinements of interpretation. Haler v. Gering Bean Co., 163 Neb. 748, 81 N.W.2d 152. This rule applies not only to the Bureau's duty to determine whether an injury of an employee is compensable, but also to its duty to determine who was the employer at the time of such injury.

The Workmen's Compensation Bureau is charged with the duty and vested with the authority to hear and determine all claims by an injured employee for compensation from the Workmen's Compensation Fund, and in the exercise of such power it has full authority to hear and determine all questions within its jurisdiction. Section 65–0503, NDRC 1953 Supp.

In the case of Burkhardt v. State, 78 N. D. 818, 53 N.W.2d 394, the question before this court was whether Burkhardt was an employee of Messer or Schmidt. It is true that as far as that case discloses no special appearance was made involving the objection of the jurisdiction of the Bureau.

One of the duties imposed upon the Bureau under our statutes is to proceed under Chapter 65–09, NDRC 1943, as amended, to secure payment of an award from an uninsured employer. To make the procedure therein provided fully effective, the Bureau must have the right to proceed against several persons who may be the possible employer or employers of an injured employee. If it did not have such right it could not fully protect the Workmen's Compensation fund. The protection of the Workmen's Compensation Fund is in the interest of all employees entitled to participate therein as provided by the statutes. Many situations arise, such as exist in this case, where it is difficult in advance of the taking of testimony to determine who is the employer of a workman.

When we consider that the Workmen's Compensation Act is remedial in nature, and should be given a liberal construction to accomplish the purpose intended, one of which, under Chapter 65–09 appears to be to aid in the protection of the fund, we conclude that the Workmen's Compensation Bureau had jurisdiction in this matter.

■ As a part of the objection that the Bureau had no jurisdiction, respondent contended that the Bureau had no right to call or allow to be called certain witnesses for cross-examination under the statutes. This proceeding was originally started by giving the notice required by Section 65–

0902, NDRC 1943, and by making service as therein provided. However, when it came to the hearing before Commissioner Sailer, the Bureau was apparently proceeding under the terms of Chapter 28–32, NDRC 1943 as amended. The issue was clearly specified in the original notice. It stated that it was given to determine whether or not the alleged injury of Duane Houghton was compensable under the North Dakota Workmen's Compensation Act and to determine who was the employer of the claimant on the alleged date of injury, and to determine whether or not the employer or employers were covered as provided by law.

Section 28–3208, NDRC 1953 Supp. deals with specifications of any issues to be furnished by the agency. It excepts the Workmen's Compensation Bureau therefrom by stating:

"Provided, however, that the commissioners of the workmen's compensation bureau may make awards without the giving of the notice herein provided for."

That became a part of our law in 1945. Chapter 219 of the 1945 Session Laws.

After the first notice of hearing the Workmen's Compensation Bureau proceeded under the provisions of Chapter 28–32, NDRC 1943, as amended. Section 28–3205 thereof provides:

"Rules of Procedure; Complaint; Notice of Hearing; Filing and Service.

"1. * * *

"2. At such hearing, the person against whom the proceedings have been instituted shall be afforded the same opportunity to present evidence and to examine and cross-examine witnesses as is permitted to parties to an action in the district court."

■ The proceedings were taken against the Broadway Investment Company. We conclude that the Workmen's Compensation Bureau had jurisdiction of the subject matter involved in these proceedings. It also had jurisdiction to determine who was Duane Houghton's employer. Opportunity was afforded to all parties to present evidence and to examine and cross-examine witnesses. Under the above statute witnesses are subject to examination and cross-examination as is permitted to parties to an action in the district court. Cross-examination of adverse party on trial of a civil matter is authorized by Section 31–0202, NDRC 1943. The Bureau had the authority to permit examination and cross-examination of the witnesses involved in this proceeding.

We will now consider whether Duane Houghton was an employee of the Broadway Investment Company. The trial court found:

"That Duane Houghton was not an employee of Broadway Investment Company, a corporation, at the time of his injury herein involved."

Upon appeal from determination of an administrative agency it is the duty of the trial court to affirm the decision of the agency unless:

"The findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact." Section 28–3219, NDRC 1943.

The trial court reversed the proceedings and remanded them to the Bureau for action in accordance with its findings.

Duane Houghton became a member of a group consisting of Alfred Zitzow, Willmar Zitzow, Jerome Kicker and James Camrud, about October 2, 1951. Before Duane Houghton joined this group it consisted of the last four named men. He was first contacted by Jerome Kicker on a farm near Vergas, Minnesota, where he was working. Kicker told him the group "needed help running cement work and asked if I wanted

to work." Duane Houghton was never contacted by P. T. Mikkelson, nor any officer or employee of the Broadway Investment Company. He went to work for this group at an agreed wage of $1.10 per hour, plus 10%. He designated the 10% as a "bonus". He was paid that wage by the group until the accident on January 30, 1952. In the testimony he is designated as a "carpenter's helper". He was paid for his services by Alfred or Willmar Zitzow. Willmar Zitzow was considered the head carpenter of the group, as he had had more experience in building than the rest. The testimony further shows that at no time was Duane Houghton ever paid by Mikkelson or the Broadway Investment Company directly.

On October 18, 1951, P. T. Mikkelson, designating himself as "The contractor", and Alfred Zitzow, Willmar Zitzow, Jerome Kicker, James Camrud, and Duane Houghton, designating themselves as "a partnership" and calling themselves "the sub-contractor", entered into an agreement, Exhibit I, wherein the sub-contractor agreed to do and perform work called for in specifications entitled "FHA Master Case No. 4219" on duplex dwellings, one of which was located on Lot 47, Block 1, Hilleboe Terrace Addition, Fargo, North Dakota. In this agreement the sub-contractor was to furnish all labor to complete the dwelling. This agreement set forth in detail the requirements of the sub-contractor. The materials for the duplexes were to be furnished by the contractor. In turn the Broadway Investment Company furnished him with the materials. The agreement between them, Exhibit I, was signed by P. T. Mikkelson, as contractor, Willmar Zitzow, James Camrud, Alfred Zitzow, Jerome Kicker and Duane Houghton, as "sub-contractor".

A great deal of evidence was presented in an attempt to show that Duane Houghton was an employee rather than a member of the partnership. He was paid by the group. His work was supervised by Willmar Zitzow, the head carpenter. It is not neces-sary for us to determine whether Duane Houghton was an employee of the partnership or an actual partner. The issue before us is whether or not he was an employee of the Broadway Investment Company. The Bureau by its award has determined that Duane Houghton was an employee under the terms of the Workmen's Compensation Act. Section 65-0102(5), NDRC 1953 Supp. See also 65-0103, NDRC 1953 Supp. As to when a person performing labor for another is a servant or an employee or an independent contractor, see State ex rel. Woods v. Hughes Oil Co., 58 N.D. 581, 226 N.D. 586, 592.

The group that signed the agreement with P. T. Mikkelson on October 18, 1951, had not complied with the Workmen's Compensation Act. It had no insurance coverage. Neither did the Broadway Investment Company have workmen's compensation coverage.

Duane Houghton contends that he signed the agreement without reading it and with the understanding that he was not to be considered as a contractor or sub-contractor. He says that he signed it because he was told that it was necessary for him to do so in order to obtain a steady job. No formal partnership agreement existed between the members of the group or so-called partnership. The partnership agreement, if any existed, was based upon an oral understanding between the parties.

Houghton said he had no responsibility except to do ordinary labor. He also says that he was not a partner. He says that he did not know how to do contract work or how to be a contractor. He had had no experience in the building trade. He admits that Mikkelson never gave him any instructions as to how to use the "skill saw" which he was operating when he was hurt. As far as Duane Houghton knew, checks received from Mikkelson for the work of the group were made payable either to Alfred or Willmar Zitzow. They took care of the payment of the group. If Duane Houghton was an employee, he was an employee of

the group that entered into the contract with Mr. Mikkelson on October 18, 1951. There is no evidence in the record to indicate that at any time Duane Houghton had any direct contact with the Broadway Investment Company or any officer or agent thereof.

It is contended that P. T. Mikkelson was merely a supervising agent for the Broadway Investment Company in building several duplexes in Fargo in the fall of 1951 and the beginning of 1952. This is an apparent attempt to bring the Broadway Investment Company within the terms of Section 65–0102(5) (c), NDRC 1953 Supp., which states:

"Persons employed by a sub-contractor, or by an independent contractor operating under an agreement with the general contractor, for the purpose of this chapter shall be deemed to be employees of the general contractor until such time as the sub-contractor or independent contractor has complied with the provisions of this title;".

Mikkelson had complied by taking out Workmen's Compensation Insurance. The only testimony as to the relationship of P. T. Mikkelson and the Broadway Investment Company comes from Mr. Ike, an officer of the Broadway Investment Company, and P. T. Mikkelson. The Broadway Investment Company contracted with Mr. Mikkelson to build certain duplexes for them. In turn Mikkelson subcontracted the work involved. Prior to the contract of October 18, 1951, between Mikkelson and the group of which Duane Houghton was a member, Mr. Mikkelson had been in the contracting business under the name of "Modern Building Service." The group, or so-called "partnership", was paid certain percentages of the cost by Mr. Mikkelson after every inspection made by the FHA. Mikkelson made his last report to the Workmen's Compensation Bureau in 1952. He had commenced making such reports when he took out workmen's compensation after starting his operations in the building trade in North Dakota. Mr. Mikkelson did not include in his 1952 report the names of the group that signed Exhibit I, the contract of October 18, 1951. He says that he did not include them as they were sub-contractors and not his employees. They had designated themselves as "sub-contractor".

Mr. Mikkelson was one of the incorporators of the Broadway Investment Company, but he was not a director thereof. The testimony shows that the Broadway Investment Company contracted with him to build thirteen duplexes in Fargo at a fixed fee of 12 shares of stock in the Broadway Investment Company of the par value of $100 per share. Mikkelson in turn agreed to pay the sub-contractor $2,200 for the duplex dwelling on Lot 47, Block 1, Hilleboe Terrace Addition. The sub-contractors in turn paid the group which included Duane Houghton, the claimant, wages, and then Houghton got 10% on the dollar above his hourly wages and the remainder of the profits were divided between the other four members of the group.

We are satisfied from the evidence that P. T. Mikkelson was the general contractor, and that therefore, Section 65–0102 (5) (c), NDRC 1953 Supp., imposes no liability on Broadway Investment Company. The Bureau's finding that Duane Houghton, the claimant, was an employee of the Broadway Investment Company is based on surmise and conjecture and has no support in the evidence. A careful consideration of the entire record conclusively shows that Duane Houghton was not an employee of the Broadway Investment Company at the time of his injury.

The judgment of the district court is affirmed.

GRIMSON, C. J., and BURKE, SATHRE, and MORRIS, JJ., concur.