1998 ND 138

Gilberto **CERVANTES, individually; and Gilberto Cervantes, Trustee for the North Dakota Workers Compensation Bureau, Plaintiffs and Appellees,**

v.

**DRAYTON FOODS, L.L.C., Defendant and Appellant.**

Civil No. 970388

Supreme Court of North Dakota.

July 8, 1998.

Galen J. Vaa (argued) and James E. Nicolai of McLarnan, Hannaher, Vaa, Skatvold & McLarnan, P.L.L.P., Moorhead, Minnesota, for plaintiffs and appellees.

Louise Dovre Bjorkman (argued), Eric J. Magnuson, Sheryl Ramstad Hvass, and John M. Bjorkman of Rider, Bennett, Egan & Arundel, Minneapolis, Minnesota, Bernie C. Reynolds, of Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, Minnesota, and Scott K. Porsborg of Smith, Bakke, Hovland & Oppegard, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Drayton Foods, L.L.C. (Drayton) appealed from a judgment awarding Gilberto Cervantes damages for injuries he suffered while working at Drayton's plant. We hold Drayton was not a contributing employer immune from liability under N.D.C.C. § 65–01–08 of the Workers Compensation Act, and we affirm.

[¶ 2] In November 1995 Cervantes was employed with Preference Personnel, Inc., d/b/a Preferred Temporary Services (Preference), a business engaged in providing laborers to other businesses on a temporary basis. Preference contracted with Drayton to provide Cervantes as a temporary employee. Drayton paid Preference an hourly rate for Cervantes' services, and Preference paid Cervantes' wages and the premium for Cervantes' worker compensation coverage.

[¶ 3] Cervantes injured his hand while operating Drayton's roll processing machine on November 20, 1995. He subsequently applied for and received worker compensation benefits. He then filed this action against Drayton, seeking damages for Drayton's "negligent maintenance, operation and repair of the roll processing machine." Drayton moved for summary-judgment dismissal of the case, asserting Cervantes' exclusive remedy was the receipt of worker compensation benefits, and he was barred from suing Drayton for damages. The trial court determined only Preferred was immune from suit:

> "The Workers' Compensation Act is not designed to give every tortfeasor immunity, especially those who have not secured compensation for the injured worker by paying premiums into the fund. To accept defendant's argument would be to extend immunity to both Preferred and its client, Drayton Foods, for the payment of a single premium, and would narrow the plaintiff[']s rights and also the Bureau's subrogation rights against Drayton Foods on a risk for which it never received a premium from Drayton Foods. Any such extension should properly be the product of legislative enactment rather than judicial fiat."

[¶ 4] The case went to trial. The jury found Drayton's negligence was a proximate cause of Cervantes' injury. Judgment was entered upon the jury verdict, awarding Cervantes damages, plus costs and interest, totaling $198,261.40.

[¶ 5] On appeal Drayton asserts the trial court erred in denying its motion for summary judgment, because, as a matter of law, Cervantes was barred from bringing this action. Summary judgment is a procedure for promptly disposing of a lawsuit without a trial if there is no genuine issue of dispute as to the facts or any inferences to be drawn from the undisputed facts, or if the only question presented is a question of law. *Hovland v. City of Grand Forks*, 1997 ND 95, ¶ 5, 563 N.W.2d 384. Summary judgment allows for disposal of a controversy if either party is entitled to judgment as a matter of law. *Bigwood v. City of Wahpeton*, 1997 ND 124, ¶ 9, 565 N.W.2d 498.

[¶ 6] The Workers Compensation Act represents a legislatively created compromise of claims between injured workers and their employers. *Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445, 453 (N.D.1994). Under the Act, the employee gives up the right to sue the employer in exchange for sure and certain benefits for all workplace injuries, regardless of fault. *Westman v. Dessellier*, 459 N.W.2d 545, 548 (N.D.1990). Drayton claims Cervantes was a "loaned servant" performing temporary labor for Drayton, qualifying Drayton as Cervantes' "employer" and immune from liability for work injuries sustained by Cervantes for which he received worker compensation benefits.

[¶ 7] The legal issue we are asked to decide is whether the client of a service providing temporary workers is an employer of the temporary worker for purposes of immunity from suit under the worker compensation exclusivity provisions. This issue has been decided in numerous jurisdictions. *See* 3 Larson's Workers Compensation Law, § 48.23. Under their particular worker compensation schemes, a number of jurisdictions have concluded a temporary employee is an employee of both the labor broker and its customer company and both are immune from suit by the injured worker, whose exclusive remedy is worker compensation benefits. *See, e.g., Sorenson v. Colibri Corp.*, 650 A.2d 125 (R.I.1994); *Goodman v. Sioux Steel Co.*, 475 N.W.2d 563 (S.D.1991); *Danek v. Meldrum Mfg. & Eng'g Co., Inc.*, 312 Minn. 404, 252 N.W.2d 255 (1977). Other courts have held a company securing services of a temporary worker from a labor broker is not an employer of the temporary worker for purposes of entitling the company to immunity from suit by the injured worker. *See, e.g., Novenson v. Spokane Culvert & Fabricating*

*Co.,* 91 Wash.2d 550, 588 P.2d 1174 (1979); *Hill v. Erdle Perforating Co.,* 53 A.D.2d 1008, 386 N.Y.S.2d 265 (1976); *see also Parson v. Procter & Gamble Mfg. Co.,* 514 N.W.2d 891 (Iowa 1994) (fact issue whether employees of labor broker could be deemed employees of broker's client precluded summary judgment dismissal).

[¶ 8] None of the foregoing authorities are particularly persuasive or dispositive in this case. Our particular worker compensation exclusivity language is found in N.D.C.C. § 65–01–08:

"*Contributing employer relieved from liability for injury to employee.* Where a local or out-of-state employer has secured the payment of compensation to that employer's employees *by contributing premiums to the fund,* the employee, and the parents of a minor employee, or the representatives or beneficiaries of either, *have no claim for relief against such contributing employer* or against any agent, servant, or other employee of such employer for damages for personal injuries, but shall look solely to the fund for compensation." (Emphasis added).

Under this statute an injured worker who is covered by worker compensation insurance is barred from suing the employer "contributing premiums to the fund" for the worker's coverage. However, under N.D.C.C. § 65–01–09, an injured employee is expressly authorized to "proceed at law to recover damages" against other third parties having "a legal liability" to the worker.

[¶ 9] When a statute is clear and unambiguous "it is improper for courts to attempt to go behind the express terms of the provision so as to legislate that which the words of the statute do not themselves provide." *Schaefer v. North Dakota Workers Compensation Bureau,* 462 N.W.2d 179, 182 (N.D.1990). Although our primary purpose in construing a statute is to determine the legislative intent, that intent first must be sought from the language of the statute. *State v. Schlotman,* 1998 ND 39, ¶ 10, 575 N.W.2d 208. N.D.C.C. § 65–01–08 is clear and unambiguous. An injured employee is barred from bringing an action only against "a contributing employer." The contributing employer is the entity who pays the premium to the fund to secure worker compensation coverage for the employee and, in turn, receives immunity from legal liability for injuries to the worker.

[¶ 10] Drayton argues it indirectly contributed to the worker compensation fund by its payment of an hourly rate to Preferred for Cervantes' services. We accept that as fact, but the same argument can be made for any independent contractor or other party who pays a contract fee or price for labor services which indirectly covers the cost of the worker compensation premiums. The immunity statute could, but does not, refer to indirect contributors. We agree with the Washington Supreme Court, which rejected a similar argument in *Novenson,* 588 P.2d at 1175–1177:

"Kelly is in the business of providing casual labor to customers who need temporary workers. Kelly, as an employer, must of course, do all those things every employer is required to do, such as employee reporting, payment of industrial insurance premiums, internal revenue withholding, and general bookkeeping and accounting concerning these daily laborers. Kelly has an employer number with the Department of Labor and Industries and is a single employer entity for workmen's compensation purposes. Kelly charges its customers, such as Spokane Culvert, for the services of its employees. The fact that such charges include the industrial insurance premiums paid to the Department of Labor and Industries is, we find, of no moment in the present inquiry. The fees charged by any contractor normally cover its costs of doing business and would include such an expense.

\*      \*      \*      \*      \*      \*

"For whatever reason, Spokane Culvert found it advantageous to contract with Kelly to provide it with temporary workers. As opposed to permanent employees of Spokane Culvert, Kelly laborers were not placed on its payroll, nor were they eligible for company benefits. Spokane Culvert seeks the best of two worlds—minimum wage laborers not on its payroll, and also protection under the workmen's compensa-

tion act as though such laborers were its own employees. Having chosen to garner the benefits of conducting business in this manner, it is not unreasonable to require Spokane Culvert to assume the burdens. A potential burden, in this instance, may well be the application of RCW 51.24.010, which permits a common law action for negligence."

■ [¶ 11] We defer to a reasonable interpretation of a statute by the agency enforcing it, especially when the agency interpretation does not contradict clear and unambiguous statutory language. *Lende v. North Dakota Workers' Compensation Bureau*, 1997 ND 178, ¶ 12, 568 N.W.2d 755. Under N.D.Admin.Code § 92–01–02–21, the Workers Compensation Bureau has determined when a client leasing employees is the contributing employer:

"*Employee leasing arrangements.*

"1.  *Definitions.* As used in this section:

"a.  'Client' means an entity leasing one or more employees from a labor contractor.

"b.  'Employee leasing arrangement' means a client uses the services of a labor contractor to maintain all or some of its employees. Employee leasing arrangement does not include an arrangement to provide temporary employees.

"c.  'Labor contractor' means an entity leasing one or more of its employees to another company.

"d.  'Temporary employee' means an employee who is provided by a labor contractor to a client less than three-fourths of any three consecutive months.

"2.  *Coverage.* For purposes of coverage under the Workers Compensation Act, a client leasing an employee from a labor contractor pursuant to an employee leasing agreement must be deemed the employer of the leased employee, and the bureau may require the client to provide workers' compensation coverage for the leased employee. The labor contractor shall provide workers' compensation coverage for temporary employees provided to clients."

Under these regulations, a company leasing an employee from a labor contractor for three-fourths or more of any three consecutive months must pay for the worker compensation coverage of the leased employee. That company becomes the "contributing employer" and is immune, under N.D.C.C. § 65–01–08, from suit for damages if the employee is injured. However, a company who uses a temporary employee for less than three-fourths of any three consecutive months is not responsible for worker compensation payments and is not the contributing employer for purposes of receiving immunity under the statute. These regulations provide a bright line for interpreting employment status and who is a contributing employer immune from suit by injured employees. We have previously refused to read beyond the statutory language to deny an employer immunity for intentional torts. *Schlenk v. Aerial Contractors, Inc.*, 268 N.W.2d 466 (N.D.1978); *see also Schreder v. Cities Service Co.*, 336 N.W.2d 641 (N.D. 1983). *But see, Zimmerman by Zimmerman v. Valdak Corp.*, 1997 ND 203, ¶ 21, 570 N.W.2d 204. Neither will we here go beyond the statutory language to extend immunity to a non-contributing employer.

[¶ 12] It is undisputed Cervantes was a temporary employee who, at the time of injury, had worked less than three-fourths of a three-consecutive-month period for Drayton. Drayton has not provided a persuasive rationale for rejecting these administrative definitions of leased and temporary employees for purposes of applying the immunity shield under N.D.C.C. § 65–01–08. Drayton did not pay worker compensation premiums for Cervantes and was not, therefore, a contributing employer statutorily immune from liability for negligently causing injury to Cervantes. We hold the trial court did not err in determining, as a matter of law, Cervantes was not statutorily barred from bringing an action for damages against Drayton.

[¶ 13] Judgment affirmed.

[¶ 14] VANDE WALLE, C.J., and MESCHKE, SANDSTROM, NEUMANN, JJ., and THOMAS K. METELMANN, D.J., concur.

[¶ 15] THOMAS K. METELMANN, D.J., sitting in place of MARING, J., disqualified.